# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**RECEIVED JAN 16 2015 CLERK, U.S. DISTRICT COURT WEST. DIST. OF PENNSYLVANIA**

15-0069

LOUIS LUYTEN
PLAINTIFF
v
JOHN C. FULMER et Al.
DEFENDANTS

CASE No. ~~2-12-CV-00967-CRE~~

MAGISTRATE JUDGE CYNTHIA REED EDDY

JURY TRIAL DEMANDED

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I INTRODUCTION

1. This is a § 1983 action filed by Plaintiff LOUIS LUYTEN, a federal prisoner, alleging violation of his constitutional rights to receive medical care and seeking injunctive relief and money damages.

### II JURIDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1331 a 1343 in that this is a civil action arising under the Constitution of the United States.

3. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 (a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured by

- 1 -

Acts of Congress providing for equal rights of persons within the jurisdiction of the United States. Plaintiff filed an administrative tort claim concerning the occurrences complained of on February 13, 2011, within two years after those occurrences, and brought suit within six months of the mailing of the notice of final agency denial of the claim, as required by 28 U.S.C. § 2401 [For a claim under Federal Tort Claims Act]

## III  PARTIES

4. Plaintiff Louis Luyten was at all times relevant to this action a prisoner incarcerated at the Allenwood Low Security Institution (L.S.C.I) located in the Western District of Pennsylvania, he is presently confined at the Leavenworth U.S.P. in Kansas.

5. Defendant senior Correctional Officer (c/o) John C. Fulmer

6. Defendant c/o. Sosnoskie

7. Defendant Lieutenant G. Persing.

8. Defendant Lieutenant Eric Klinefelter

9. Defendant Lieutenant Shawn Danner

10. Defendant Captain Feltman

11. Defendant c/o Ms L. Parker

12. Defendant c/o Daniel Marr

13. Defendant c/o Young

14. Defendant c/o Ms H. Shafer

All foregoing defendants were at all times relevant to this action employed at the Allenwood L.S.C.I. in White Deer, located in the Western District of Pennsylvania, and were acting under color of state law and are being sued in their individual capacities.

### IV EXHAUSTION OF AVAILABLE REMEDIES

15. Plaintiff exhausted to his ability his administrative remedies before filing this complaint.

### V FACTUAL STATEMENTS

16. On February 03, 2011, Plaintiff reported unprofessional conduct by staff member John Fulmer to Captain Feltman in a written grievance, this on CPN Feltman's own request. (exhibit 1.)

17. On or around February 10, 2011, Plaintiff asked CPN Feltman the status of his complaint. CPN Feltman's answer was: "it's on my desk." He did nothing and in fact encouraged

c/o Fulmer to believe that his actions of abuse are acceptable in the Bureau of Prisons.

18. On February 11, 2011 Plaintiff gave a written account to the Unit Disciplinary Officer of c/o Fulmer's abuses, harassments, degradations and terrorising actions and requested to be transferred to another housing unit. (exhibits: 2 account, exhibit 3: wanton abuses)

19. On February 13, 2011, during the 10:00 A.M. count, c/o Fulmer kicked the cube's furniture of Plaintiff so hard that it was propelled into the middle of the room. Inmate Luis Molina who was sleeping as well as Plaintiff, jumped from the overhead bunk and together with Plaintiff stood simultaniously. Struck with feverish temperature Plaintiff under influence of chlorpheniramine, combating influenza, stood drawsy while c/o Fulmer was using excessive loud and profane language toward Plaintiff, not toward Molina.
Plaintiff was sent to the Special Housing Unit (S.H.U.), c/o Fulmer refused Plaintiff to put on his sweatshirt and to retrieve his eyeglasses from his locker.
At the B-side of Brady Unit, c/o Fulmer pushed Plaintiff against the wall, an unnessecary assault, and after searching Plaintiff's body, he started to tear the lining of his coat to pieces. Counselor Snyder, standing by Fulmer's side did nothing.
The officer waiting to escort Plaintiff to the S.H.U. witnessed the whole operation, he told Plaintiff during

the escort he had never seen such disrepectful behavior of which he disapproved.

Plaintiff was terrorized, felt sick and traumatized by the "attypical and significant hardship" subjecting him to conditions much different from those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion.

20. On February 24, 2011 Plaintiff lodged an administrative remedy procedure [case No. 632712], alleging unprofessional misconduct and wanton abuses and assault against c/o Fulmer. (exhibits 4 and 5.)

21. On February 24, 2011 Plaintiff filed another administrative grievance for the harm resulting from losing his unique, irreplaceable eyeglasses by c/o Fulmer. c/o Fulmer had forbidden Plaintiff to retrieve his eyeglasses during the placement in the S.H.U.; he had (c/o Fulmer) intentionally kept the eyeglasses in his possession to keep them for himself. The Personal Property Report that was made up by c/o Fulmer does not mention the eyeglasses (exhibit 6)

Plaintiff has obtained two affidavits from inmates that witnessed that Fulmer had the eyeglasses in his possession in Plaintiff's cube and in his office (exhibits 7 and 8)

Plaintiff lost the privelege to read and write, to watch T.V., read the call-outs or view the landscape, putting him under stress and reducing

the quality of life below the standard of dignity and decency. Authorities were informed of the loss of the eyeglasses but did nothing. (exhibits 9, 10, 11 and 12)

An administrative Tort Claim was filed by Plaintiff to the Regional Office for the loss of his eyeglasses and a claim for money damages on June 01, 2011. (exhibit 13.)

22. On February 27, 2011 c/o Fulmer lodged an incident report, giving as reason "Possession of the Georgetown Law Journal, The Jailhouse Lawyer" another inmate's property, threatening the orderly running of U.S.P. Allenwood. Plaintiff had loaned the legal book from inmate Dz Miller I.D. 13658-035.

Prisoners cannot be barred from furnishing assistance to one another to meet their legal rights. No attorney is available at L.S.C.I. Allenwood for advice.

Plaintiff filed an administrative grievance [No 639283]

23. On February 27, 2011 Plaintiff was locked up in the S.H.U. in administrative detention, clearly in retaliation for filing administrative remedy grievances, with the bogus reason "at your request for protection" locked up for a long period of 50 days.

It was c/o Fulmer who packed up Plaintiff's possessions so he could lodge the incident report mentioned in § 22 supra (exhibit 14.)

In the S.H.U., essentially confined to his bed, resulting in physical debility, having no access to his medical

-6-

supplies from his property; being denied his personal legal documents, notes, lesson books and puzzle books, causing mental lethargy.

The decision of placement in the S.H.U. was not made to restore or maintain discipline or to deter any physical danger but was done in retaliation on Plaintiff's bringing of litigation.

During the 50 days in the S.H.U. no formal review of my housing in administrative detention was held by the Segregation Review Official (S.R.O.) LT. G. Persing, neither was a psychiatric or psychological assessment, including a mandatory detention order issued after 30 days in the S.H.U. as described in § 541.21.

LT Persing has shown negligence, which in general terms is an act and omission taken as an officer in his judicial capacity that breaches the duty of care that a reasonable person would exercise. The consequences of my long term detention are substantial and retained in my medical records, they meet the test of "suffering" recognized as inconsistent with contemporary standards of decency, which entitle injunctive relief as well as compensatory and punitive damages.

Over and again Plaintiff attempted in the S.H.U. to obtain his legal documents, daily verbally to S.H.U. property managers Marr and Keeney. In writing on 3/13/11 to S.H.U. LT Persing and counselor Snyder, on 4/14/11 again to LT Persing, all without avail. Title 28 Para 543.11 entitles an inmate to solicit personal, especially legal documents (exhibit 15)

-7-

24. On or around March 25, 2011 the detention in the S.H.U. was lifted, pending bed space in the unit. Asking for status 5 days later Plaintiff was told he was held in the S.H.U. on S.I.A. hold indefinitely pending investigation. Plaintiff asked the Brady Unit Manager for a copy of the Detention Order on April 21, 2011 in writing, but never received it. (exhibit 16)

25. On April 13, 2011 Plaintiff sent a written request for informal resolution to the S.H.U. LT Persing, asking under what policy he was denied his legal documents for seven weeks after many oral and written requests. (exhibit 17)

26. On April 15, 2011 an Administrative Detention Order was put under Plaintiff's cell door in the S.H.U., signed by LT Persing and c/o Sosnoskie.
(exhibit 18)
Plaintiff alleges that this Detention Order dated 4/15/2011 is a forged document that was never entered in his Central File. Multiple administrative requests BP8 and BP9 by Plaintiff, asking for resolution were never answered by LT Persing [CASE 696317 08/01/2012 CASE 643985, CASE 643988]
These documents, together with Plaintiff's further grievances about the future retaliatory placement in the S.H.U. by LT Persing were lifted out of my personal legal documents in the S.H.U. during the ilegal retaliatory transfer to a Medium Security

-8-

Institution in Beaumont Texas.
[case No 701568 (i.R. 2316119) B. Sosnoskie 8/1/2012
a case No 702080 DHO appeal 9/28/2012]

27. On 01/09/2012 Plaintiff was assaulted by c/o Fulmer during a cube shake down [case No 676937]. Inmate Richard Ulloa I.D. 17902-052 who was a witness, wrote an affidavit of the assault.
Ullowa was later called to S.I.S. and was asked by the S.I.A. if he wanted to change anything to the affidavit.
Consequently Fulmer wrote an incident report for 3 appels and 3 bananas found on Plaintiff.
In the incident report No 2254036 (exhibit 19) c/o Fulmer stated: "I then searched his cube BA-45 and found in his property a lining of a government issued coat." This was the lining that Fulmer pulled out of Plaintiff's coat on February 13, 2011 (see exhibit 4 supra) and that Plaintiff had saved as evidence, rolled up to use as a pillow.
The D.H.O. in his report "Specific evidence, relied on to support findings," mentioned Fulmer's statement about the liner, but not Plaintiff's declaration of the origin of the lining, namely the brutal destruction of Plaintiff's coat by c/o Fulmer.
Plaintiff is punished for "threatening the orderly running of U.S.P. Allenwood for possession of three appels and three bananas, with loss of 7 days DGCT (good conduct time.)
The fact is that electronic records will show that

locker searches completed by c/o Fulmer on the days in question were not on the electronic list, but were purposely and willfully added by Fulmer himself, converting this fair and impartial process of searches into a tool for his own vendetta, making the B.O.P. liable for damages.

Inmates are prepared to write affidavits in support of my position that some inmates are written up and others are not, making this an arbitrary and capricious process and not fair and balanced and against B.O.P. policies.

28. On 5/28/2012, c/o D. Marr refused Plaintiff to collect a food package that was distributed to inmates in the dining room, this happened in front of a great number of inmates.

29. On 6/01/2012, Plaintiff filed an administrative Tort Claim to the Regional Office for the loss of his eyeglasses. (exhibit 20)

30. On 6/05/2012, c/o Marr threatened Plaintiff physically and verbally, this happened after numerous day after day body searches on Plaintiff's body as he left the dining room. This threat: "If you lower your arms one more time, I will smash you down face first into the concrete.", is sufficient to establish a cruel and unusual punishment.

This entire episode occurred in the presence of LT E. Klinefelter and LT S. Danner. Neither Danner nor Klinefelter responded to the threat and in fact

encouraged c/o Marr to believe that this abuse of authority is acceptable in the Bureau of Prisons.
 (exhibit 21)

31. On 4/18/12, after another harassment by c/o Young, an unscheduled shakedown of Plaintiff's crammed an overpopulated cube where c/o Young left Plaintiff's, and only Plaintiff's bed and property in a terrible disarray. Plaintiff asked LT Klinefelter for an official inspection of the disorder of his bed and property, where several items and "all" his magazines were missing.
Called to his office after inspection, LT Klinefelter stated emphatically in presence of LT. D. Barben: "c/o Young, he can do what he wants," more so encouraging c/o Young to believe that his abuse is acceptable.
Again LT Klinefelter had knowledge and power to prevent and intervene in any wrongs or aid in preventing the commission of the same and shall be liable to the party injured (Title 42 U.S.C. § 1986) [case 654591: young 8/9/2012.]

32. On 02/09/12, Plaintiff wrote a letter to his congressman in Connecticut which ensued an investigation, but the harassment and retaliation just went on.
 (exhibit 22)

33. On 06/15/2012 Plaintiff was brutally and maliciously assaulted by c/o B. Sosnoskie as explained in Plaintiff's affidavit and Brief summary of facts and attached exhibits entered to the Court on 08/20/2012

Administrative grievance No 701568 8/1/12 and No 702080 9/28/12  Docket entry [5] (exhibit 23)

34. On 7/17/2012, DHO Bittenberger took 90 days (ninety) of DGCT (good time) from Plaintiff for "having been assaulted" by c/o Sosnoskie in the S.H.U.
CASE No 702080 9/28/2012

35. On 8/27/2012, Plaintiff entered a Motion to the Court for Injunction from Prison Redesignation which was retaliatory and illegal with attached exhibits Docket No [6]

36. On 9/04/2012 Plaintiff entered a Notice of Report of "Actual Injury" with attached exhibits Docket No [7] c/o Shafer confiscated legal documents, a sealed manila envelope that was opened not in the presence of Luyten. The envelope contained Luyten's private legal papers, constituting an "actual injury," and the documents were not returned to Plaintiff. The administrative grievance that Plaintiff filed was lifted from his personal documents during the transfer to another Institution.
Prison officials were now able to read his legal complaint. It took over two months through the B.O.P. Trulincs paying system to transfer the $350 to the court as Court filing fee. And it took only two weeks to make the same transfer from an oversea bank in Belgium to do the same. Meanwhile the Court dismissed all plaintiff's motions.
The authorities will do anything to delay prisoners to

defend their legal rights in the B.O.P.

37. On 8/27/2012 Plaintiff wrote a letter to the B.O.P. Central Office in Washington DC to inquire on the response of the following earlier lodged Administrative Requests: case No.: 630165 6/30/11, 632712 7/19/12, 634202 6/6/2011, 643988 7/14/11, 676388 4/28/12 and 676937 5/29/12; no response was received.

38. On 10/04/2012 Luyten was transferred to the Hudson County Jail in New Jersey for a hearing to his appeal on his sentence, to return to Allenwood on 7/25/13. During this period of 9 months and 19 days Plaintiff received no mail and was completely isolated from his family and the outside world having no access to his property that stayed in Allenwood L.S.C.I.
When he returned to Allenwood he was promptly put back in Disciplinary Segregation in the S.H.U.
Plaintiff was denied access to his legal documents once more. Promises were made by Warden Sauers but nothing ever materialized.
Plaintiff entered an Administrative complaint case No 705412, also lifted from his property at transfer. Cell-mate Zachary Lilley wrote an affidavit about the events concerning Luyten's property requests.
(exhibit 24.)

39. In February 2014 Plaintiff was transferred to Beaumont Texas, a Medium Security Institution

-13-

and in June 2014 he was again transferred to Leavenworth in Kansas.

40. Throughout the whole period of nearly three years Plaintiff was plagued with and has reported a chronic and unbearable chestpain. Medical Services at the Allenwood L.S.C.I., Beaumont TX and now since June 6, 2014 at Leavenworth KS scheduled Plaintiff to see an outside specialist to diagnose the origin of the pain that clusters him down to his bed for some relief. At arrival at Leavenworth he was told again during his first "sick call" visit that it could take 3 to 6 months, but nothing ever materializes.

It is now over six months later and plaintiff is still having severe chestpain, floaters in his left eye that is almost blind and his right knee that at times cannot sustain the strain of his body weight; the result of the assault in the S.H.U. in Allenwood. He also has a constant throbbing of his left eardrum after perforation during an assault by an inmate in Beaumont TX. (exhibit 25)

## VI CLAIMS FOR RELIEF

### A. FAILURE TO PROTECT

41. The failure of defendant Captain Feltman to act on his knowledge of a substantial risk of serious harm to Plaintiff violates his Eight Amendment right to be free from deliberate indifference to his safety.

-14-

42. The failure of defendants LT E. Klinefelter and LT S. Danner to act on their knowledge of a substantial risk of serious harm to Plaintiff violates his Eight Amendment right to be free from deliberate indifference to his safety.

43. The retaliatory action of defendant G. Persing with substantial assault on Plaintiff's life by c/o Sosnoskie violates his Eight Amendment right to be free from deliberate infliction of injury.

44. The actions, the pattern of calculated harassment, unrelated to prison needs from the defendants c/o J. Fulmer, c/o Sosnoskie, L. Parker, D. Marr, Young and H. Shafer, the immediate result of the refusal of their superior officers to provide protection to Plaintiff for redress of his grievances are sufficient to establish a cruel and unusual punishment claim under the Eight Amendment.

B. DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

45. The refusal of Medical Services of all three Institutions to have the indiscribably awful chestpain of Plaintiff diagnosed; a pain that at times reaches its zenith and that forces him to lay down on his bed, constitude deliberate indifference to Plaintiff's serious medical needs in violation of the Eight Amendment.

46. Prison Medical Providers have a policy of restricting,

if not outright denying follow up care despite Plaintiff's "sick call" visits and requests.

47. The failure of Medical Providers to take steps to ensure that Plaintiff received the needed treatment, despite their knowledge of Plaintiff's medical needs, constitute deliberate indifference to Plaintiff's serious medical needs.

48. As a result of failure to provide needed medical treatment Plaintiff is suffering further physical and emotional pain.

C. RETALIATION

49. The refusal of Senior Officers CPN Feltman, LT Klinefelter, LT Danner and LT Persing to provide protection to Plaintiff as a result of Plaintiff having filed grievances and a lawsuit against prison staff and the redesignation to a Medium Facility, constitute retaliation for petitioning officials and government for redress of grievances and therefore violate the First Amendment.

50. As a result of Defendant Senior Officer's failure, omissions and retaliatory actions, Plaintif was viciously assaulted and received physical and emotional injuries.

VII RELIEF REQUESTED

Wherefore, Plaintiff requests that the Court grant the following relief.

51. Declare that Defendants CPN Feltman, LT Klinefelter, LT Danner and LT Persing violated Plaintiff's Eight Amendment rights when they failed to protect him from a known risk of assault and he was severely assaulted

51. Declare that Defendants Sosnoskie, Parker, Marr, Young and Shafer violated Plaintiff's Eight Amendment right.

52. Declare that Medical Services of LSCI Allenwood, Beaumont F.C.I and U.S.P. Leavenworth violated Plaintiff's Eight Amendment right to medical care.

53. Declare that Defendants Persing and Sosnoskie violated Plaintiff's First Amendment right not to be retaliated against for filing a ligitimate grievance.

54. Issue an injunction requiring that Defendants Prison Medical Providers provide physical therapy to Plaintiff as requested by the Utilization Review Committees for Outside Medical care of all three Institutions.

55. Award compensatory damages for plaintiff's physical and emotional injuries and punitive damages against each defendant.

56. Restore Plaintiff's Good Time (D.G.C.T.).
and
57. Grant Plaintiff such or other relief as it may appear the Court Plaintiff is entitled to.

## VIII  AFFIDAVIT

58. Pursuant to 18 U.S.C. 1746, I, Louis Luyten, declare under penalty of perjury, the foregoing is true and correct, to the best of my knowledge.

59. Affidavit of Declaration of Indigency:
The affiant swears that he is too poor to afford further court costs and fees and is too poor to afford an attorney.

60. Affidavit of Verification:
The affiant declares that the facts stated in this complaint are true to his knowledge and the facts stated on information and belief are true to the best of his knowledge and belief.

60. This affidavit is sworn in the State of Kansas, in the U.S.P. Leavenworth, affidavit of Louis Luyten before the notary public: on date; 01/06/2015
Louis Luyten.

AUTHORIZED BY THE ACT OF JULY 7, 1955 TO ADMINISTER OATHS (18 USC. 4004)

61. Proof of Service: The affiant swears that the complaint was mailed and served to the court on this 08th day of January 2015
Louis Luyten

- 18 -